1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,   : 17-CR-00116(WES)
                            :
                            :
                            :
                            :
                            :
   vs.                      : United States Courthouse
                            : Providence, Rhode Island
                            :
                            :
                            :
                            :
MARCIO ALEXANDRO            : Thursday, October 18, 2018
MARTINEZ-LARA,              : 2:08 p.m.
        Defendant.          :

- - - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE WILLIAM E. SMITH
UNITED STATES CHIEF DISTRICT COURT JUDGE


A P P E A R A N C E S:

For the Government:   GERARD B. SULLIVAN, AUSA
                      U.S. Attorney's Office
                      50 Kennedy Plaza
                      Providence, RI  02903

For the Defendant:    JOHN F. CICILLINE, ESQ.
                      Cicilline Law Office
                      381 Atwells Avenue
                      Providence, RI  02909




Court Reporter:   Lisa Schwam, CSR, CRR, RPR, RMR
                  One Exchange Terrace
                  Providence, RI  02903


Proceedings recorded by computerized stenography.  Transcript produced by Computer-Aided Transcription.

```
 1              (In open court)
 2              THE COURT:  All right.  Good afternoon.  We're
 3     here in the matter of the United States vs. Marcio
 4     Alexandro Martinez-Lara, and we are here for sentencing
 5     this afternoon.  Let's have counsel identify themselves
 6     for the record, please.
 7              MR. SULLIVAN:  Your Honor, Gerard B. Sullivan
 8     for the United States.
 9              MR. CICILLINE:  John Cicilline for Mr. Martinez.
10              THE COURT:  Thank you very much.  I've received
11     the presentence investigation report that was prepared
12     by the Office of Probation in this matter.  And Mr.
13     Cicilline, if I could just ask you to confirm on the
14     record that you've had the opportunity to review this
15     report with your client and that you've been able to
16     answer all of his questions.
17              MR. CICILLINE:  I'm sorry, Judge.
18              THE COURT:  I'm asking you if you reviewed the
19     presentence report with your client and were you able
20     to answer all of his questions.
21              MR. CICILLINE:  Have I gone over it with him?
22              THE COURT:  Yes.
23              MR. CICILLINE:  The answer is yes.
24              THE COURT:  Okay.  And I understand you have an
25     objection to the presentence report?
```

1    MR. CICILLINE: I do, your Honor.
2    THE COURT: So do you want me to hear you on
3 that now?
4    MR. CICILLINE: It's the objection to the memo I
5 filed. I have nothing to add to it.
6    THE COURT: Okay. Mr. Sullivan, do you want to
7 respond to the objection that Mr. Cicilline filed?
8    MR. SULLIVAN: Just briefly, your Honor, because
9 I did not file a written report.
10    THE COURT: Right, you didn't, yes.
11    MR. SULLIVAN: Judge, as I understand it, Mr.
12 Cicilline's objection is to a two-point adjustment. In
13 reading his memo, it seemed to suggest that the Court
14 would have to find that the gun was possessed in
15 connection with the 924(c), which he's not being
16 convicted of. The government's going to dismiss that
17 count.
18    And it's true that the government will dismiss
19 that count and he won't be convicted of that crime, but
20 he possessed the gun in connection with the drug
21 trafficking and in that is likely supported by the
22 evidence, as probation pointed out. The gun is
23 factually anomalous. In this case, the gun was in a
24 hide with drugs. There was also ammunition in there.
25 It was an apartment that was used primarily as a stash

```
 1    house, not as a residence, for drug dealing.  They
 2    found a large amount of valuable drugs in that stash
 3    house and even a kilo press, indicating it was a
 4    large-scale drug operation where a gun would facilitate
 5    the drug trafficking.
 6            But this gun, if I recall the pictures
 7    correctly, was wrapped in green cellophane or blue
 8    cellophane.  It was odd.  And so that was probably the
 9    only triable issue in this case.  There was
10    overwhelming evidence on all the many other counts that
11    he's pled guilty to.  I would have given those facts to
12    a jury at trial, but for here it wasn't necessary
13    particularly with the joint recommendation to a minimum
14    mandatory sentence.  So we're going to dismiss Count
15    Fifteen, the 924(c).
16            As probation points out, the Court could find
17    that the gun was possessed in connection with drug
18    trafficking.  It's a different standard; it's
19    preponderance of the evidence.  Connection is pretty
20    broadly defined.  So the legal answer is probation is
21    probably correct.  The fact -- the practical answer is
22    it doesn't matter.  It doesn't matter to the
23    government.  It doesn't matter to the sentence that the
24    Court is to impose or to the defendant.  It just
25    goes -- it's a technical question about the guidelines.
```

1    I'm not asking the Court to be a guidelines vending
2    machine, and you have to correctly calculate them, but
3    it doesn't matter.
4         And it doesn't even matter to an appeal if the
5    Court imposes a 15-year sentence because he's agreed to
6    waive the appeal.  So it's a dispute without a purpose.
7         THE COURT:  Okay.  Thank you very much.
8         MR. SULLIVAN:  Thank you.
9         THE COURT:  All right.  I've considered the
10   defendant's arguments set forth in the motion or
11   objection to the two-point enhancement and the
12   government's response, and I believe the objection has
13   no merit.  And so for that reason, I'm going to deny
14   the objection and the enhancement will stand.  So I
15   will review now on the record the advisory guideline
16   calculations as they are described in the presentence
17   report.
18        So there are 12 counts in this case that the
19   defendant has pled guilty to, and they are grouped
20   according to the grouping rules in the guidelines.
21   Group one pertains to the distribution of fentanyl,
22   cocaine, possession with intent to distribute, the
23   same, as well as the heroin and methamphetamine.  And
24   the base offense level for those counts is level 32.
25   And that's all set forth in paragraph 38 of the report.

1         Now, at paragraph 39, it notes there's a
2    two-level increase because the firearm was possessed
3    and it was in close proximity to the controlled
4    substances.  That's the matter we just discussed.
5    There's a two-point upward adjustment because the
6    defendant maintained the premises involved for the
7    purposes of manufacturing or distributing controlled
8    substances.  That yields an adjusted offense level of
9    36.
10         Counts Thirteen and Fourteen, which relate to a
11   felon in possession of a firearm, an alien in
12   possession of a firearm, are grouped together in group
13   two, and the base offense level in that group is a 24.
14   There's a four-point upward adjustment because the
15   firearm was possessed in connection with another felony
16   offense.  That yields an adjusted offense level of 28.
17   The combined offense level under the guidelines
18   grouping rules is, therefore, a level 36.
19         Now, paragraph 53 notes that the defendant
20   receives an additional enhancement, one-point
21   enhancement, because of his two prior felony
22   convictions and, therefore, he is classified as a
23   career offender under Section 4B1.1.  So he lands at
24   level 37.  Now, the defendant receives three points off
25   his guideline calculation for acceptance of

1  responsibility so the total offense level is 34.
2       The defendant's criminal history is summarized
3  in paragraph 63 of the report.  He has four criminal
4  history points.  He receives two additional points
5  because he committed this offense while under another
6  criminal justice sentence of probation.  That gives him
7  six criminal history points.  And this would otherwise
8  put him in category III, but because of his
9  classification as a career offender under 4B1.4 and as
10 an armed career criminal, his criminal history
11 calculation is elevated to level VI.
12      So as a result of his total offense level of 34
13 and Criminal History Category of VI, the defendant's
14 advisory guideline range is 262 to 327 months of
15 imprisonment.  And I would just note that the offenses
16 involved various mandatory minimums, including a
17 mandatory minimum of 15 years on Count Thirteen.
18      So with all that said, I'll turn to the
19 government first for its recommendation.
20      MR. SULLIVAN:  As the Court's aware, this is a
21 joint recommendation for 15 years.  The defendant's
22 illegally present in this country.  He's been here for
23 years.  He's been convicted in this courthouse and
24 others under various aliases.
25      This time he's in a mountain of trouble.  He's

1     admitted his identity finally and agreed to deportation
2     by stipulation.  It's clear he's not Victor Cardona or
3     Sandro Martinez or any other alias that he's used.
4     He's Marcio Alexandro Martinez-Lara, a 45-year-old
5     offender born in Bonao, the Dominican Republic.
6              If the Court accepts the joint recommendation,
7     he'll spend the next 15 years in the custody of the
8     Bureau of Prisons at taxpayer expense.  And he still
9     has a state outstanding indictment for drug trafficking
10    under the name Sandro Martinez.  I don't know what
11    they're going to do with that, but that may add some
12    time.
13             In any event, with the admissions and
14    stipulations and the joint recommendation, he'll go
15    back out -- he'll go back to Bonao to live out his 60s.
16    I think that despite the calculations in this and
17    despite how much higher just charging like the 924(c)
18    could have made this case, I think 15 years for a
19    45-year old offender where he's going to be deported
20    anyway is a full and fair resolution of the case.  And
21    so that's what I recommend to the Court.
22             So in structuring it, Count Thirteen, the
23    minimum mandatory is 15 years.  Count Fourteen, the
24    maximum sentence is ten years.  So it would be ten
25    years on Count Fourteen, fifteen years on all the

1  remaining counts.  Counts Thirteen and Fourteen carry a
2  maximum of three years of supervised release.  Some of
3  the remaining counts require five years so it would be
4  three years on Thirteen and Fourteen, five years
5  supervised release on the balance.
6          He's stipulated to deportation and so I'd ask
7  that there be a condition of supervised release that he
8  surrender to immigration officials and once deported
9  remain outside of the United States as a further
10 condition of supervised release.  No fine in this case.
11 And there are $1400 worth of special assessments.
12 Thank you.
13         THE COURT:  All right.  Thank you, Mr. Sullivan.
14         Mr. Cicilline.
15         MR. CICILLINE:  In the world of science fiction,
16 there are forces that permit us to go back in time.  Of
17 course, we all understand that in reality it's not
18 possible for such a thing to happen.  But if it were
19 possible to go back in time as it relates to this
20 defendant, I think we'd have a different outcome and I
21 think that he probably would not be here today.
22         He grew up in a tough environment, abusive home.
23 He left that environment to go live with an uncle in
24 Puerto Rico and that kind of abuse continued on.  In
25 the beginning he was involved in some very menial jobs

1    but never able to make enough money to support the
2    family, the extended family, that he basically adopted;
3    the number of kids he had, the friends, the relatives,
4    all the people he felt responsible for.  So he turned
5    to this life in drugs.  And until he got caught, he
6    never ever thought about the implications of what he
7    was doing and how it impacted on other people.
8            Since his arrest, he's gone through a change in
9    life, so to speak.  He now realizes the immorality of
10   what he did, the unlawfulness of what he did, and he's
11   truly sorry about it.  And I'm not certain that I can
12   convey to the Court sufficiently the change that this
13   man has made in his life.  I suggested in the pretrial
14   memorandum which I filed in this case that not only has
15   he demonstrated this change by his lack of trouble at
16   Wyatt, he's indicated that he'd be willing to help the
17   government to stop the kind of thing he was doing.  And
18   for him, that's a major turnabout in his life.
19           He is a totally different person than he had
20   been while he was out and doing all these illegal
21   things.  He's got a new commitment.  I don't know
22   whether it comes from involvement in religion at Wyatt
23   or whatever it was, but he now is committed to keeping
24   his life straight.
25           And Congress had this in mind when it enacted

1     that portion of the Sentencing Act that we now refer to
2     as the parsimony principle. The sentence imposed
3     should not be greater than necessary to achieve the
4     objectives. I know he's a repeat drug offender. I
5     know that his life up to the time of this arrest has
6     not been a model for anybody, but he has changed and he
7     is a different person.
8          And under the principle of parsimony, 15 years
9     is a long, long time. And I don't think that even that
10    much is necessary, but if it must be, it must be.
11    Fifteen years will accomplish all the objectives
12    intended for sentencing. It will demonstrate to the
13    Court that he understands the change in his life but,
14    more importantly, it will say to him that you can't do
15    this again. And if you do, the next time there's going
16    to be no opportunity to get out. So I suggest to you
17    that you follow our joint recommendation and sentence
18    the defendant accordingly.
19         THE COURT: Thank you, Mr. Cicilline.
20         All right. Mr. Martinez, do you wish to say
21    anything before I impose the sentence?
22         THE DEFENDANT: Yes.
23         Good afternoon, your Honor.
24         THE COURT: Good afternoon.
25         THE DEFENDANT: Your Honor, I understand and I

1    know that I've committed a very serious crime.  When I
2    was sentenced in the past, at that time I did not have
3    any children, but currently I'm a father of five
4    children.  I am so very sorry of what I did.  I
5    understand that I have caused harm to many people.  But
6    to leave my children -- or after leaving my children, I
7    realize that there is nothing as important or more
8    important than family.
9         Your Honor, I want you to understand that what
10   I'm saying does not mean that I'm telling you that I do
11   not deserve a sentence.  What I do want you to
12   understand, your Honor, is that I feel very bad and I
13   feel very guilty about what I did, especially because
14   I'm leaving my children behind.  They'll be alone.  And
15   I'm leaving my family.
16        I know that he knows that we are human.  And I
17   hope you take into account that I will be deported to
18   my home country.  I know that in my country I will do
19   things very differently because I have changed, and I
20   have changed by just seeing my children when they see
21   me.  And I didn't see things as I see them now, but I
22   want you to know, your Honor, that I'm going back to my
23   home country and I will not do the things that I did
24   before.  I thank you very much for listening to me.
25             THE COURT:  Thank you, Mr. Martinez.  You can

1  remain standing.

2         I appreciate your comments, and I appreciate the
3  comments of Mr. Cicilline on your behalf.  And I'm very
4  happy to hear that he believes that you have decided to
5  change your behavior and your ways.  I'm glad to hear
6  you say it because what is clear from your criminal
7  history and from this offense is that you've been
8  pretty much dealing drugs for a living for a long time.
9  And the amounts of drugs involved in this case were
10 very serious, significant amounts.  The types of drugs
11 that you were involved with are bringing terrible
12 destruction to our community and communities all around
13 the country.

14        Every time I impanel a jury, as I did yesterday
15 in a case involving narcotics, I have to speak to
16 people whose families have been partially destroyed
17 because of opioid addiction and death from overdose.  I
18 listened to several people yesterday in the jury that I
19 impaneled who cried uncontrollably as I spoke to them
20 about what had happened in their lives and their
21 families as a result of the drugs, so much that they
22 didn't feel they could be a fair juror.

23        This is something that I hear over and over and
24 over again, and we read about it and hear about it in
25 the newspapers and magazines and you watch it on TV and

1   we just see it all around us.  And it just can't be
2   overstated the role that you played in distributing
3   these killer drugs into the community.  So I hope you
4   realize just how horrible that is, because you bear
5   responsibility, you and a lot of others, but with
6   others you bear responsibility for bringing this
7   destruction upon so many people.
8           And I don't want to sugarcoat it; that's really
9   what it is.  And I hope you're sincere when you tell me
10  that you have finally decided you don't want to be a
11  part of that destruction.  I hope you are sincere.
12          So the recommendation here, I'm prepared to
13  accept it.  The guideline range obviously is much
14  higher than what is recommended.  There are many ways
15  that the sentence in this case could have been much
16  higher.  The government could have charged you in a
17  different way to bring upon more prison time.  I know
18  you're aware of all that, the way they handled the
19  charge and the gun; they could have charged other
20  things, that I think you're probably aware of from your
21  conversations with Mr. Cicilline, to make the sentence
22  in this case higher.
23          There are a lot of reasons why a higher sentence
24  could be justified, certainly given the amounts of
25  drugs and given your history, but for all the reasons

1   that Mr. Sullivan and Mr. Cicilline outlined, I don't
2   believe a higher sentence is necessary.  So I'm going
3   to accept the recommendation today that they have
4   provided here on the government's behalf and on your
5   behalf.
6       I do want to reiterate something that I think
7   Mr. Sullivan said, which is that because of the amount
8   of time that you're going to do on these charges and
9   the criminal history that you have, and given how old
10  you'll be when you get out of prison, which will be
11  close to 60 years old, if you were to come back to the
12  United States and engage in this kind of activity, you
13  would be almost guaranteeing yourself a life sentence.
14  So if you make that choice, you're really making the
15  choice to spend the rest of your life in prison.  I
16  don't think that's what you want to do, but I just want
17  to make sure you know the consequences of any choices
18  that you make.
19      All right.  In the matter of the United States
20  vs. Marcio Alexandro Martinez-Lara, the defendant is
21  sentenced to -- I need to spell this out by count.  It
22  will be ten years on Counts One, Two, Three, Four, Five
23  and Six, Seven, Eight, Nine, Ten, Eleven and Twelve and
24  Fourteen to run concurrent with the sentence of 15
25  years on Count Thirteen.  So the total sentence for the

1       defendant is 15 years, 180 months.
2               This will be followed by a supervised release
3       term of five years on Counts Eight, Nine and Twelve,
4       Thirteen, and three years on Counts One, Two, Three,
5       Four, Five, Six, Seven, Ten and Fourteen to run
6       concurrent with each other.  So the total is five
7       years.
8               There is no restitution in this case.  There is
9       no fine.  There is a special assessment of $100.  The
10      only special condition of his supervised release is as
11      follows:  Upon completion of the defendant's term of
12      imprisonment, he will be surrendered to a duly
13      authorized immigration official for deportation in
14      accordance with the established procedures of the
15      Immigration and Naturalization Act and, if deported,
16      the defendant shall remain outside of the United
17      States.
18              So the plea agreement in this case provided that
19      the right to appeal is waived if the defendant -- or if
20      I sentence the defendant to the recommended term of 15
21      years.  So given that I've done that, the right to
22      appeal is waived.
23              All right.  Is there anything further?
24              (Brief pause)
25              THE COURT:  That's a misprint on the sheet.

```
 1    It's 1300 -- no, 1400.  $1400 special assessment, not
 2    100.  Any other corrections or modifications?
 3           PROBATION OFFICER:  Could you Count Eleven as
 4    well in the supervised release.
 5           THE COURT:  I thought I said Eleven, but if I
 6    didn't, then Eleven is -- Count Eleven is three years
 7    of supervised release also concurrent.
 8           Anything else from the government?
 9           MR. SULLIVAN:  The standard deportation
10    condition on supervised release.
11           THE COURT:  I just said that.
12           MR. SULLIVAN:  Oh, you did.  I'm sorry.  I
13    missed that part then.
14           Finally, your Honor, I move to dismiss Count
15    Fifteen.
16           THE COURT:  All right.  And the motion to
17    dismiss Count Fifteen is granted.
18           Was there a forfeiture allegation here?
19           MR. SULLIVAN:  There is.  Two motor vehicles.
20    The preliminary orders are already entered.
21           THE COURT:  Okay.  All right.  Anything else
22    from the defendant?
23           MR. CICILLINE:  No, your Honor.
24           THE COURT:  Very good then.  We'll be in recess.
25           (Time noted:  2:39 p.m.)
```

1
2                          **CERTIFICATION**
3    I certify that the foregoing is a correct transcript from the
4    record of proceedings in the above-entitled matter.
5
6    /s/ Lisa Schwam
7    Official Court Reporter              November 21, 2019
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25